MORGAN, LEWIS & BOCKIUS LLP
Melissa D. Hill (*Pro Hac Vice*)
101 Park Avenue
New York, NY 10178-0060
Tel.: (212) 309-6000
Fax: (212) 309-6001
Email: melissa.hill@morganlewis.com

FISHER & PHILLIPS, LLP
Scott M. Mahoney
Nevada Bar. No. 1099
300 S Fourth Street, Suite 1500
Las Vegas, NV 89101
Tel.: (702) 252-3131
Fax: (702) 252-7411
Email: smahoney@fisherphillips.com

*Attorneys for Defendants Delta Air Lines, Inc. and the Administrative Committee of Delta Air Lines, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARSHA R. DUVANEY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DELTA AIR LINES, INC., THE ADMINISTRATIVE COMMITTEE OF DELTA AIR LINES, INC., GREG TAHVONEN, MINDY DAVISON, JANET BRUNK, AND JOHN/JANE DOES 1-5,<br><br>Defendants. | **Case No. 2:21-cv-02186-RFB-EJY**<br><br>**<u>STIPULATION REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION</u>** |

Plaintiff and Defendants (each a "Party" and together the "Parties") to the above-captioned action HEREBY STIPULATE AND AGREE, by and through their undersigned counsel, that the following specifications shall govern discovery of all documents, electronically stored information ("ESI"), and any other materials and information produced by the Parties during discovery in the above-captioned action.

## I.  General

A.  The Parties shall take reasonable steps to comply with the procedures set forth in this Stipulation.

B.  The terms of this Stipulation shall be construed to ensure the exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by this Court.

C.  Except as specifically limited herein, this Stipulation governs the production of discoverable documents by the Parties during the litigation.  In the event of transfer to other courts, this Stipulation will remain in effect in all respects, until adopted by the transferee court or replaced by a successor agreement.  This Stipulation shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation. Subject to this Stipulation, the Parties' objections and responses to requests for production of documents and interrogatories, and subject to a binding Protective Order ("Protective Order"), all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein.  Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable.  Additionally, nothing in this Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain ESI or to move for an appropriate order pursuant to the Federal Rules of Civil Procedure on the ground that the sources

are not reasonably accessible because of undue burden or cost or on the ground that there is good cause for the document's production.

D. The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Stipulation. To the extent compliance with this Stipulation imposes an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer to resolve the issue.

E. Consistent with their obligations under applicable Federal Rules of Civil Procedure, the Parties will attempt to resolve, in person, in writing (including e-mail) or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

**II.    Production Format – Hardcopy**

Hardcopy documents should be scanned as a PDF format or single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should, at minimum, contain the following fields: "BEGBATES," "ENDBATES," "BEGBATESATTACH," "ENDBATESATTACH," "PAGES" and "CUSTODIAN." The Parties should produce additional fields that are readily available but shall not be required to incur costs to perform objective coding or other manual creation of fields not present in the original documents. The documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original document contains relevant information in color necessary to understand the meaning or content of the document, the document should be produced as single-page, 200 DPI with a minimum quality level of 75, 24-bit, color JPG images. To the extent that the Producing Party OCR's the document for its own benefit, OCR should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

### III. Production Format – ESI

The following section governs the production of electronically stored information, unless expressly provided for in another section of this Stipulation, the Parties agree in advance and in writing, or if this Stipulation is modified by the Court.

A. <u>File Types and Formats</u>. All spreadsheet (*e.g.*, Microsoft Excel, Corel Quatrro, etc.) files shall be produced as native files with TIFF placeholder images. Except as otherwise stated herein, audio (*e.g.*, .mp3, .mp4, .wav, etc.), and video (*e.g.*, .wvm, .m4v, etc.) shall be produced as native files with TIFF placeholder images, but must be produced so that comments and tracked changes, if any, are visible. Emails shall be produced as TIFFs. The Parties will meet and confer on the production of other file types, such as CAD drawings, structured databases (*see* VI below). In advance of depositions, the Parties reserve the right to produce TIFF versions of any previously produced native files at their discretion.

B. <u>TIFF Images</u>. ESI should be produced as single-page, Group IV, 300 DPI TIFF images except for those documents detailed in Section III(A). Any document produced as TIFF images shall be named according to the Bates number of the corresponding TIFF image. Each .tiff file should be assigned a unique name matching the Bates number of the corresponding image. Bates numbers and confidentiality designations, if applicable, should be electronically branded on each produced .tiff image. These TIFF images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint documents, which contain redactions, should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF/JPG image. Color originals may be produced in B&W TIFF format, but either Party may subsequently request, by Bates number(s), a replacement set of images in color only to the extent that the Requesting Party demonstrates that the loss of the color detracts from the usability or reduces the ability to understand the

information imparted in the original, however categorical or wholesale requests are deemed invalid.

C. <u>Parent-Child Relationships</u>. Unless otherwise addressed in this Stipulation, for email families, the parent-child relationships (the association between emails and attachments) should be preserved. Email attachments should be consecutively produced with parent email record.

D. <u>Load File Formats and Metadata to Be Produced</u>. All ESI should be produced with a delimited, database load file (i.e., .dat) that contains the metadata fields listed in Appendix 1, attached hereto, to the extent captured at the time of the collection. The database load file shall be provided with UTF-8 encoding. To the extent that metadata does not exist, is not reasonably accessible or available for any documents produced, or would be overly burdensome to provide, nothing in this Stipulation shall require any Party to extract, capture, collect or produce such data. An .opt image cross-reference file should also be provided for all TIFF images.

E. <u>Native Files</u>. If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that it is available, the original document text shall be provided in a document level multi-page UTF-8 with BOM text file with a text path provided in the .dat file; otherwise text contained on the slipsheet shall be provided in the .txt file with the text path provided in the.dat file. Native files will be produced in a separate folder for the production.

If documents requested in native format require redactions, the Parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. To the extent that either Party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to

this paragraph or to the extent records do not easily conform to native or TIFF format (*i.e.*, structured data), the Parties should meet and confer in good faith.

      F.    <u>Extracted Text and OCR</u>. Each document, whether produced in Native or TIFF format, and whether originally existing in electronic or in hard copy (*see* Section II *supra*), shall be produced with extracted text or OCR, as described herein.

      1.    <u>Extracted Text (Emails, Unredacted Native ESI, and Redacted Spreadsheets)</u>. All email, un-redacted ESI, and redacted spreadsheets produced as native files should be provided with complete document-level extracted text files. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments. Text must be extracted in its intended order (for example, text from PDFs with two columns should be extracted from the first column before moving on the second column, rather than extracting text from the top line across both columns, etc.).

      2.    <u>Format of Extracted Text and OCR</u>. The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 with BOM encoded TXT files provided in a separate folder. The number of TXT files per folder should be limited to 1,000 files.

      G.    <u>Limited Informal Electronic Collection</u>. Defendants may collect and produce certain categories of documents utilizing informal collection methods even though such collection method may alter certain aspects of those files' metadata as they exist at the time of collection (e.g., created date, file path). Those categories include Plan documents and amendments, ASC 715 and ASC 960 reports, experience and mortality studies, materials related to the

Administrative Committee, statements of work for actuarial services to the Plans, templates of Plan-related participant communications, Plaintiff's personnel files, and copies of Plan-related communications provided to Plaintiff. To the extent Defendants identify additional categories of documents where they believe informal collection would be appropriate, the Parties agree to meet and confer to discuss such categories.

**IV.     Previously Collected and Produced Data**

The Parties agree that this Stipulation does not create an obligation to recollect or reproduce any prior collections or productions collected or produced prior to the entry of this ESI Stipulation. This includes not requiring either Party to reproduce productions in the production format outlined in this ESI Stipulation.

**V.      Production – Receipt and Storage of Protected Material**

The recipient of any Protected Material that is provided under this Stipulation shall maintain such information in a reasonably secure and safe manner that ensures access is limited to the persons authorized herein, and shall further exercise the same standard of due and proper care with respect to the storage, custody, use, and/or dissemination of such information as the recipient would use with respect to its own proprietary information.

If the recipient discovers any loss of Protected Material or a breach of security, including any actual or suspected unauthorized access, relating to the produced Protected Material, the Receiving Party shall:

A.     Promptly provide written notice to Producing Party of such breach within a reasonable time of the breach discovery.

B.     Investigate and make reasonable efforts to remediate the effects of the breach and provide Producing Party with assurances that safeguards are being implemented to ensure another breach does not occur.

C.     Provide sufficient information about the breach that the Producing Party can reasonably ascertain the size and scope of the breach. The Requesting Party agrees to cooperate with the Producing Party or law enforcement in investigating any such security incident.

D.      The Requesting Party shall promptly take all necessary and appropriate corrective action to terminate the unauthorized access and/or correct the breach.

**VI.     Production Format - Structured Data**

If a Party is producing electronic information from a database that cannot be provided in a readily accessible production format (e.g., as an Excel file), the Parties will meet and confer in advance of that production to discuss the most appropriate and cost-effective production format, which may include an export of data. The Parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on productions and production format. If the Parties cannot reach agreement, the Parties may refer the matter to the Court or its designee.

**VII.    Production Format – Social Media**

If a Party is producing electronic information from social media websites (e.g., LinkedIn, Facebook, Twitter), the Parties will meet and confer in advance of that production to discuss the most appropriate and cost-effective production format.

**VIII.   Production Format - Media**

Documents shall be exchanged on secure file transfer protocols (e.g., FTP) or similar secure electronic transmission.  The production media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter.

**IX.     Processing and Other Specifications**

A.      <u>Bates Numbering and Confidentiality Designations</u>. Each page of a produced image shall have a legible, unique Bates number that includes an alpha prefix along with a fixed number, e.g., ABC00000001, electronically "burned" onto the image at the bottom of the page so as not to unreasonably obscure any information from the source document.  Each image page or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production.  No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

B.     ESI Date and Time Processing. Each Party's ESI should be processed using a consistent Time Zone for all data. The Party shall share the Time Zone selected for processing of its data with the other Party.

C.     Global or Horizontal Deduplication. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field should not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the CUSTODIAN metadata field subject to any exceptions provided in this Stipulation.

D.     To the extent a Party identifies identical documents where the hash values do not match as a result of technical issues due to emails being stored in and collected from two email environments, the Producing Party can use near duplicate analysis to remove documents with 100% textual matches.

E.     Email Thread Suppression:  Each Party may deduplicate e-mails in such a way as to eliminate earlier or incomplete chains of e-mails, and produce the email (as TIFF or as otherwise required) that contains the most complete iteration of an e-mail chain — i.e., the produced email contains all previous replies, forwards, and the original message and all attachments in the whole email family. A Party may, therefore, not eliminate earlier emails that have attachments not attached to the last email in a chain. However, a Party may not create a new thread by combining related emails if such emails are not contained in one already existing email.

F.     Embedded Objects.  Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access and PDF. Subject to claims of privilege and immunity, as applicable and when possible, objects with those identified file types shall be extracted as separate files and shall

be produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided within this Stipulation.

G. **Compressed Files.** Compressed file types (e.g., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

H. **Redactions.** As described in more detail below, the Producing Party can redact non-public personally identifiable information and material that is claimed to be privileged. If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting, the Parties will meet and confer regarding it before such redactions are made. If the issue cannot be resolved, the Parties may seek resolution from the Court.

I. **No Designation of Discovery Requests.** Production of hard copy documents and ESI in the reasonably usable form set out in this Stipulation need not include any reference to the requests to which a document or ESI may be responsive.

J. **Foreign Language Documents.** To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language document and ESI in the original language. Documents containing foreign language text must be OCR'd using the appropriate settings for that language (e.g., OCR of German documents must use settings that properly capture umlauts and OCR of Asian language documents must properly capture the relevant Asian characters). The Producing Party has no obligation to provide a translation of the documents or ESI or any portion thereof.

**X.    Identification and Collection of Documents**

A. Except as otherwise agreed upon in this Stipulation, to the extent that a Party finds it is necessary to collect and search custodial ESI in order to identify responsive materials, the Parties will meet and confer in an effort to agree upon the following:

1. List of records custodians;
2. Search methodology to be applied, including, but not limited to, search terms and date restrictions;

        3.      Location of relevant data sources including custodial and non-custodial; and

        4.      Applicable timeframe for production of documents.

    B.      The producing party must make reasonable efforts to select and/or propose custodians who likely possess information and documents responsive to the respective discovery demands.

    C.      <u>Search Methodology.</u>

        1.      <u>Email and Non-Email</u>. The Parties agree to search for and produce unique, responsive records from sources of hard copy and ESI to the extent a custodian reveals that such locations may contain responsive information and such data is within the possession, custody or control of the Producing Party.

        2.      The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Determinations of discoverability, responsiveness and privilege shall be made by the Producing Party.

## XI.    Preservation

    A.      The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

    B.      The Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of the following sources of ESI because they are either not reasonably accessible or not likely to contain additional relevant information from other sources whereby the associated burden and costs outweigh any benefit:

        1.      Data duplicated in any electronic backup system.

        2.      Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics and "unallocated" space on hard drives.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3. Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that is difficult to preserve without disabling operating systems.

4. On-line access data such as temporary internet files, history, cache files, cookies, and the like, wherever located.

5. Data stored on photocopiers, scanners and fax machines.

6. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

7. Server, system or network logs.

8. Legacy data or data remaining from systems no longer in use that is unintelligible on the systems in use to the extent such data is duplicative of data on systems in use.

9. Computer programs, operating systems, computer activity logs, programming notes or instructions, batch files, system files, and miscellaneous files or file fragments.

10. Data stored on mobile devices (excluding laptop and notebook computers) and tablets.

This section should not be interpreted as limiting a Producing Party's ability to identify ESI not listed above as being not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(A).

## XII. Privilege and Privilege Logs

A. The Parties agree that the following privileged communications or documents need not be included in a privilege log: (a) communications about this action between Defendants and their counsel, (b) work product of counsel and parties, (c) internal communications within a law firm, (d) communications regarding litigation holds or preservation, collection, or review in this or any litigation, (e) communications about this action between Plaintiffs and their counsel, (f) communications about this action between or among Plaintiffs' counsel, including within a law firm, and (g) communications and documents that post-date filing of the complaint in this action.

However, any communication or document to which the fiduciary exception arguably applies must be included in a privilege log.

### XIII.  Third Party Documents

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the Parties to the litigation have requested that third Parties produce documents in accordance with the specifications set forth herein.  The Issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the opposing Party.  Nothing in this Stipulation is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third Parties to object to a subpoena.

### XIV.  Good Faith

The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulation.  If a Producing Party cannot comply with any material aspect of this Stipulation, such Party shall inform the Requesting Party as to why compliance with the Stipulation was unreasonable or not possible within fourteen (14) calendar days after so learning.  No Party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with other affected Parties to the action.

### XV.  No Effect on Discovery or Admissibility

This Stipulation does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI.  The Parties are not waiving the right to seek any discovery, and the Parties are not waiving any objections to specific discovery requests.  Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the work product doctrine, or any other privilege that may be applicable.  Nothing in this Stipulation shall be construed to affect the admissibility of any document or data.  All objections to the admissibility of any document or data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time.

### XVI.  Costs and Burden

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1    All Parties reserve the right to seek shifting or sharing of certain discovery costs, including vendor and attorney fees, in appropriate circumstances.

## XVII. Authenticity

A document produced in this litigation, with the exception of extracted text files, shall be presumed to be authentic if offered as evidence against the Party that produced it unless the Party (a) gave notice at the time of production that the authenticity of the document may be challenged, including the reasons for such a challenge; or (b) shows good cause for its failure to give such notice at the time of production.

When documents produced in accordance with this Stipulation are used in any proceeding herein, including depositions, hearings, or trial, the image copy of documents shall be the copy used. This paragraph does not apply to any Federal Rule of Evidence 1006 summary exhibits or summary demonstratives.

## XVIII.    Protective Order

Nothing in this Stipulation shall be deemed to limit, modify, or override any provision of the Protective Order.

## XIX. Modification

This Stipulation may be modified by (a) a Stipulated Order of the Parties or (b) an Order of the Court for good cause shown.

### APPENDIX 1: METADATA FIELDS

| Field Name | Field Description |
|---|---|
| BegBates | First Bates number (production number) of an item. |
| EndBates | Last Bates number (production number) of an item.<br>**The EndBates field should be populated for single-page items. |
| BegAttach | First Bates number of attachment range (i.e. Bates number of the first page of the first attachment). |
| EndAttach | Last Bates number of attachment range (i.e. Bates number of the first page of the first attachment). |
| AttachRange | Bates number of the first page of the parent item to the Bates number of the last page of the last attachment "child" item. |
| PgCount | Number of pages in the item. |
| Custodian | Name of person from whose files the item is produced. |
| CustodianAll | Name of all custodians from whose files the item would have been produced if it had not been deduplicated. |
| FileSize | Size (in kilobytes) of the source native file. |
| FileExtension | Indicates file extension of source native file. |
| DateSent | Date email or calendar item was sent. (mm/dd/yyyy) |
| TimeSent | Time email or calendar item was sent. (hh:mmAM/PM) |
| DateReceived | Date email or calendar item was received. |
| TimeReceived | Time email or calendar item was received. |
| To | The names and SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item. |
| From | The name and SMTP email address of the sender of the email or calendar item. |
| CC | The names and SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item. |
| BCC | The names and SMTP email addresses of all recipients that were included on the "BCC" line of the email. |
| Subject | Any value populated in the Subject field of the source file metadata or document properties (*e.g.*, subject line of email or calendar item). |

| Field Name | Field Description |
|---|---|
| DateCreated | Date the item was created. (mm/dd/yyyy) |
| TimeCreated | Time the item was created. (hh:mm AM/PM) |
| FileName | The filename of the source native file for an ESI item. |
| Title | Any value populated in the Title field of the source file metadata or item properties. |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties. |
| Confidentiality | Indicates if item has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| Redacted | User-generated field that will indicate redactions. "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted. Otherwise, blank. |
| HashValue | The unique hash value of the file. |
| NativeFileLink | Hyperlink path for documents provided in native format only.<br>**The linked file must be named per the BegBates value. |
| TextPath | Full relative path to the current location of the document-level text file. |

**IT IS SO STIPULATED.**

Dated: February 28, 2024

/s/ Christopher Barrett
Robert A. Izard (pro hac vice)
Christopher Barrett (pro hac vice)
**IZARD, KINDALL & RAABE LLP**
29 South Main Street
Suite 305
West Hartford, CT 06107
860-493-6292
Fax: 860-493-6290
dneedham@ikrlaw.com
rizard@ikrlaw.com
cbarrett@ikrlaw.com

**MOTLEY RICE LLC**
Douglas P. Needham (pro hac vice)
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: 860-218-2720
dneedham@motleyrice.com

**KEMP JONES, LLP**
Don Springmeyer, Esq.
Nevada Bar No. 1021
d.springmeyer@kempjones.com
Michael Gayan, Esq.
Nevada Bar No. 11135
m.gayan@kempjones.com
3800 Howard Hughes Pkwy., 17th Floor
Las Vegas, Nevada 89169
(P) (702) 385-6000
(F) (702) 385-6001

*Attorneys for Plaintiffs*

/s/ Melissa D. Hill
Melissa D. Hill, Esq. (Pro Hac Vice)
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178-0060
melissa.hill@morganlewis.com

Scott M. Mahoney, Esq.
Nevada Bar. No. 1099
**FISHER & PHILLIPS LLP**
300 South Fourth Street #1500
Las Vegas, Nevada 89101
smahoney@fisherphillips.com

*Attorneys for Defendants*

IT IS SO ORDERED:

_____
UNITED STATES MAGISTRATE JUDGE

DATED: February 28, 2024