UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARSHA R. DUVANEY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELTA AIR LINES, INC., and THE ADMINISTRATIVE COMMITTEE OF DELTA AIR LINES, INC.,<br><br>Defendants. | Case No. 2:21-cv-02186-RFB-EJY<br><br>**ORDER** |

Pending before the Court is Plaintiff's Motion to Compel Defendants to Respond Fully to Interrogatory 10 (ECF No. 78). The Court has considered the Motion, Defendant's Opposition (ECF No. 81), and Plaintiff's Reply (ECF No. 85).

**I.    Background**

The instant Motion arises out of a putative class action alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff DuVaney, a former employee of Northwest Airlines of thirty-three years, is a participant in Northwest Airlines' Pension Plan for Contract Employees (the "Contract Plan"), which is currently sponsored by Defendants. ECF No. 1 ¶¶ 1–2, 13. Plaintiff receives a Joint-and-Survivor Annuity ("JSA") that provides a fixed monthly benefit amount; Plaintiff's husband, as named beneficiary, is entitled to receive a specified portion of that benefit amount in the event Plaintiff predeceases him. *Id.* ¶¶ 3, 13. JSAs are provided as an alternative to a Single Life Annuity ("SLA") in which no benefit is provided to a surviving spouse of the participant, and which therefore result in higher monthly benefits than JSAs. *Id.* ¶ 4.

Although the monthly benefits paid during the life of a participant will be less under a JSA, § 205(d) of ERISA requires that any qualified JSA provide benefits that are the "actuarial equivalent" of benefits that a participant would be entitled to under an SLA. 29 U.S.C. § 1055(d)(1)(B). Plaintiff alleges that Defendants violated § 1055(d) by providing her JSA benefits that are not actuarially equivalent to what she would have received under an SLA plan resulting in what she estimates to be

1

a $12,605 reduction in benefits. ECF No. 1 ¶ 77. Plaintiff asserts this reduction is the result of the "unreasonably low conversion factors" used by Defendants in calculating JSA benefits. *Id.* ¶ 75. Plaintiff further alleges that the use of unreasonably low conversion factors affect not only participants of the Contract Plan, such as herself, but also participants of the Northwest Airlines Pension Plan for Salaried Employees (the "Salaried Plan") and the Northwest Airlines Pension Plan for Pilot Employees (the "Pilots Plan").[1] *Id.* ¶¶ 1, 7.

Based on the above allegations Plaintiff identifies a putative class that includes all retirees who began receiving a JSA benefit or Qualified Pre-Retirement Survivor Annuity (which is similar to a JSA but pays a benefit to a surviving spouse in the event the participant dies before retirement) under any of the Plans on or after December 10, 2015. *Id.* ¶ 87. Based on data produced by Defendants, this putative class contains approximately 4,272 members. ECF No. 81-1 ¶ 7.

Plaintiff served Defendants with an initial set of interrogatories on June 7, 2024, including one that requested Defendants disclose the monthly amount of the SLA each retiree in the putative class could have received at their Benefit Commencement Date ("SLA at BCD"). ECF No. 78 at 4. This interrogatory was in addition to a prior request for production containing identical language. ECF No. 81-2 at 15. Plaintiff asserts that the SLA at BCD for each putative class member is essential for determining whether they are receiving an actuarially equivalent JSA amount, as well as determining the harm each putative class member suffered. ECF No. 78 at 3. On July 15, 2024, Defendants' response directed Plaintiff to their previously produced spreadsheet, which Defendants assert contains over forty seven fields of data for each participant and beneficiary (the "Data Set"). *Id.* at 4. On July 12, 2024, Plaintiff asked for confirmation that the Data Set included each retiree's SLA at BCD,[2] to which Defendants responded confirming the Data Set did not include this information for all participants. ECF No. 81 at 8.

---

[1] Collectively, the Contract Plan, the Salaried Plan, and Pilot Plan are referred to as the "Plans."
[2] There appears to be disagreement regarding the communication that occurred on July 12, 2024. Plaintiff represents she told Defendants that the information was missing, while Defendants represent that Plaintiff merely asked whether this information was included in the Data Set. ECF Nos. 78 at 5; 81 at 8. This dispute is of no moment as both parties acknowledge this communication took place over a month after Plaintiff's initial interrogatories were served on Defendants, and Plaintiff does not allege that the interrogatory at issue indicated Defendants' response to her identically phrased request for production had been insufficient or nonresponsive.

After additional discussion between the parties, Defendants provided a supplementary response to the relevant interrogatory explaining that SLA at BCD is not maintained on their system "in a … way … that could be retrieved and exported in a programmatic, automated way using their system's current functionality." ECF No. 78-4 at 5. Following a further meet-and-confer, Defendants represent that they engaged their recordkeeper, Conduent, to manually retrieve SLA at BCD for a sample of fifty putative class members and provided this data to Plaintiff, but Plaintiff rejected it. ECF No. 81-1 ¶ 8. Defendants further represent that, based on the time and expense involved in producing this sample, Conduent estimated that producing the SLA at BCD for the 4,272 class members would take approximately 355 hours and cost $41,535.[3] ECF No. 81-5 ¶ 8. Plaintiff states that Conduent gave the same estimate to her in response to a subpoena. ECF No. 78 at 10. After further failed attempts to resolve this issue, Plaintiff filed the instant Motion to Compel.

## II.     The Parties' Arguments

As a threshold argument, Plaintiff asserts that Defendants have waived any objection to responding to the interrogatory at issue by not raising a specific objection in their initial response. ECF No. 78 at 11. Plaintiff alleges that Defendants offered only "boilerplate objections" without specifically addressing the requested SLA at BCD amounts. *Id.* at 15-16. Separately, Plaintiff addresses proportionality under Federal Rule of Civil Procedure ("FRCP") 26(a) asserting disclosure of the SLA at BCD for each purported class member is appropriate because of the public interest in retirement plans, the amount in controversy is likely in the tens of millions, the SLA at BCD exists within Defendants' systems, Defendants' significant resources relative to Plaintiff, the importance of the SLA at BCD amounts in proving claims on behalf of the putative class, and the relatively low cost of production compared to the alleged amount in controversy. ECF No. 78 at 12-14. Plaintiff further argues that any burden or expense on Defendants is a result of their own decision to outsource recordkeeping to a third-party, and that poor recordkeeping is no excuse to avoid discovery. *Id.* at 16-19.

---

[3]     In her Reply Plaintiff asserts Defendants are only quoting the amount Conduent would charge her directly to produce the information. ECF No. 85 at 9. As Defendants' Response and attached declarations make clear, this is the same figure Conduent quoted to Defendants, and is based on the time taken to provide the sample data. ECF No. 81 at 11.

3

Defendants argue that the manual retrieval of SLA at BCD for all 4,272 putative class members is unduly burdensome and disproportionate to the needs of the case. ECF No. 81 at 12. Defendants assert they did not waive this objection because, *inter alia*, Plaintiff's initial interrogatories did not raise the specific issue of whether SLA at BCD values were available for the identified retirees, and a supplemental response with specific objections was provided once that issue was identified. *Id.* at 22. In the alternative, Defendants argue that any failure to object should be excused because of their good-faith efforts to promptly respond once Plaintiff raised the issue in her July 12, 2024, communication subsequent to the service of her initial interrogatories on Defendants. *Id.* at 23.

Turning to the merits of their objection, Defendants assert that Plaintiff's expert could use the Data Set to derive the SLA at BCD for each retiree, and that this is a far less burdensome means than manual retrieval. *Id.* at 13-15. Defendants further argue that Plaintiff's asserted damages cannot, without more, outweigh the burden of manual production, and that maintaining SLA at BCD data in useful form is not required by any law and would serve no business purpose. *Id.* at 17-21.

### III. Discussion

District Courts have broad discretion to control the scope of discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Parties are permitted to seek discovery of any nonprivileged matter that is relevant and proportional to the needs of the case, with proportionality determined by reference to several factors including "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The party seeking to avoid discovery bears the burden of explaining why discovery should be denied. *U.S. E.E.O.C. v. Caesars Entertainment*, 237 F.R.D. 428, 432 (D. Nev. 2006).

Because Defendants do not challenge the relevance of the information being sought, the Court limits its discussion to proportionality. As an initial matter, the Court agrees with Defendants in that, to the extent they neglected to raise a specific objection to the relevant interrogatory, there is good cause to excuse such waiver. *See* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived *unless the court, for good cause, excuses the failure*.") (emphasis added). The interrogatory at issue, interrogatory 10, was identical to a request for production to which Defendants

had already responded by producing the Data Set and raising specific objections. *Compare* ECF No. 81-2 at 15-16 *with* ECF No. 78-2 at 4-5. More importantly, the issue of whether SLA at BCD values for every retiree was included in the Data Set was not raised by Plaintiff until over a month after her initial interrogatories had been served. ECF No. 81-1 ¶¶ 9-10; ECF No. 78-1 ¶ 9.

While Plaintiff is of course correct that opposing parties may not "refuse discovery simply by making a boilerplate objection that it is not proportional," Fed. R. Civ. P. 26 advisory committee's note to the 2015 amendment, the fact that Plaintiff appears not to have indicated that Interrogatory 10 requested anything beyond what Defendants had already disclosed until well after the interrogatory was served means Defendants had little reason to offer a specific objection. The Court therefore finds sufficient good cause exists to excuse Defendants' failure to offer a specific objection in their initial response to Interrogatory 10 and that their supplemental response qualifies as a timely objection.

Turning to proportionality, Defendants' primary objection is that the time and cost involved in manually retrieving SLA at BCD values for each putative class member would be unduly burdensome. ECF No. 81 at 12-16. Though Plaintiff argues that any burden involved is not undue by citing *Holland-Hewitt v. Allstate Life Ins. Co.*, 343 F.R.D. 154 (E.D. Cal. 2022), the Court finds this contention unpersuasive. It is true that the plaintiff in *Holland-Hewitt* argued that Allstate could not establish undue burden because the contact information being sought was information Allstate was responsible for tracking on a routine basis. *Id.* at 164. However, the court did not rule based on this argument; rather, the court based its decision on the fact that Allstate "d[id] not suggest any specific alternative timeline at all; d[id] not describe the actual process or what is involved in preparing this information to produce, generally nor directly in response to the fact this information is already available in anonymized form." *Id.* at 174. In contrast, here, Defendants provided specific details of the process required to manually retrieve SLA at BCD, as well as the time and cost involved. ECF No. 81 at 10-11. Even if the court in *Holland-Hewitt* had based its decision on the reasoning Plaintiff suggests, it would not be applicable to the facts of this case. Unlike an auto insurer's tracking of contact information as it relates to covered accidents, Defendants have no reason to maintain SLA at BCD values for plan participants who have opted for a different type of

benefit and who no longer have the option to select an SLA.[4] Plaintiff has not established that retaining such data is routine practice for Defendants and, indeed, Defendants have averred the opposite.[5] *Id.* at 6.

For similar reasons, the Court finds Plaintiff's arguments regarding supposedly poor recordkeeping on Defendants' part unavailing. The cases cited by Plaintiff all involve parties who failed to maintain in an easily accessible manner information or documents they were either required to maintain or the maintenance of which would be cautioned by competent business practices. *See, e.g.*, *Pham v. Wal-Mart Stores, Inc.*, Case No. 2:11-cv-01148-KJD-GWF, 2011 WL 5508832 (D. Nev. Nov. 9, 2011) (seeking production of injury reports); *Union Commercial Services Ltd. v. FCA Int'l Operations LLC*, Case No. 16-cv-10925, 2018 WL 558760 (E.D. Mich. Jan 25, 2018) (invoices from sales); *Edwards v. Ford Motor Co.*, Case No. 11-cv-1058-MMA (BLM), 2012 WL 553383 (S.D. Cal. Feb. 17, 2012) (standardized reports relating to vehicle component issues). In this case, Plaintiff is asking Defendants to produce a hypothetical benefit amount for an annuity that the putative class members never chose and no longer have the option of choosing. Defendants cannot be faulted for not maintaining this information in readily accessible form for each individual retiree. For these reasons, while the Court agrees some SLA at BCD data may be necessary for Plaintiff to establish her claims on behalf of the class, the Court is not convinced that requiring Defendants to produce these values for the putative class is proportionate at this stage of litigation.

Nor has Plaintiff explained why the SLA at BCD value for each of the 4,272 purported class members is necessary at this stage. Plaintiff's Complaint alleges that the conversion factors used to calculate JSA benefits, as specified in plan documents, are "unreasonably low," thus resulting in the putative class members receiving monthly benefits that are not actuarially equivalent to that which they would have received under an SLA. ECF No. 1 ¶¶ 74–86. Establishing such a claim does not require calculating the individual SLA at BCD value for each of the 4,272 retirees identified in the Data Set because if Plaintiff's theory is correct, and the factors utilized by Defendants are inherently

---

[4] The Contract Plan states that "[n]o election made after the Annuity Starting Date shall be effective to change the form of pension." ECF No. 36-2 at 32.
[5] While Plaintiff cites to several provisions of ERISA for the proposition that Defendants have an obligation to maintain benefits data, ECF No. 78 at 17, none of the cites require employers to retain SLA at BCD data for participants that have opted for, and are currently receiving, a different form of annuity.

6

flawed, it is reasonable to infer that such an error will affect most if not every participant who enrolled in a JSA within the specified time period. Plaintiff acknowledges as much in her Complaint. *Id.* ¶ 76 ("While the amount of the loss suffered will vary depending on the ages of the participant and beneficiary at the time of retirement, all participants receiving JSAs under the Plans are not receiving actuarially equivalent benefits[.]").

However, while production of SLA at BCD data for 4,227 individuals may be unduly burdensome for Defendants at this stage, the Court does not find Defendants' proposed alternative appropriate either. Simply leaving Plaintiff's experts to derive SLA at BCD values using the Data Set would be to present Defendants with another avenue for attacking Plaintiff's eventual motion for class certification.[6] Defendants characterize Plaintiff as admitting she could "back into" the SLA at BCD using information provided in the Data Set. ECF No. 81 at 16 (quoting ECF No. 78 at 17). However, Plaintiff in the cited portion of her brief only offers that she could "*estimate*" these values. ECF No. 78 at 17 (emphasis added). In contrast to this estimate, Defendants acknowledge that Conduent could produce the actual value by retrieving each retiree's benefit commencement package. ECF No. 81 at 10. Therefore, Defendants' relative access to this data compared to Plaintiff's must be weighed against the burden in producing it.

In contexts such as this it is not unusual for courts to require Defendants to produce data for a representative sample of the putative class so as to provide enough information to support class certification. *Romo v. GMRI, Inc.*, Case No. EDCV-12-0715-JLQ, 2013 WL 11310656, at *5 (C.D. Cal. Jan. 25, 2013) ("Sampling is in fact a commonly used and reasonable compromise at the class certification stage of a case."). In *Tinnin v. Sutter Valley Med. Found.*, Case No. 1:20-cv-00482-NONE-EPG, 2021 WL 1315435 (E.D. Cal. Apr. 7, 2021), for example, the plaintiff sought production of electronic payroll and timekeeping data for 7,400 employees in native format, each of which would have to be manually retrieved by the employer. *Id.* at *3. The Eastern District of

---

[6] Defendants' reliance on *James v. UMG Recordings, Inc.*, Case No. 11-cv-01613-SI (MEJ), 2013 WL 5978322 (N.D. Cal. Nov. 8, 2013), on this point is unavailing. Defendant in that case argued that producing the information sought would require reprogramming its database and creating new software, *id.* at *2, whereas Defendants' declarations specify a method of manual retrieval that, while costly and time consuming, does not require such drastic measures. Further, the plaintiffs in *James* admitted they could extrapolate the requested information from materials currently possessed, *id.*, while Plaintiff, as explained above, has only stated that her expert could derive an *estimate* of SLA at BCD values. ECF No. 85 at 4.

7

California found that such a request was unduly burdensome at the class certification stage, and instead ordered the employer to produce a representative sample, leaving plaintiff the option to request additional discovery after the class had been certified. *Id.* at *5.

While this is not a Fair Labor Standards Act collective action, the Court nonetheless finds a representative sample is appropriate and that a sample size of approximately five percent of the retirees in the Data Set, or approximately 215 individuals, is sufficient to give Plaintiff the data necessary to argue class certification is appropriate. The Court is cognizant of the fact that Defendants previously offered to provide such a sample to Plaintiff and, in fact, did direct Conduent to produce the SLA at BCD for 50 individuals in the Data Set, which Plaintiff rejected.[7] However, Plaintiff at no point explains why a representative sample is not sufficient for purposes of certifying the class. In the absence of a specific bases to reject a sample, the Court finds there is no reason a sample will prevent Plaintiff from proceeding to certification. If Plaintiff finds the sample is for some reason insufficient, Plaintiff is invited to raise this issue with the undersigned.

Because Defendants have already provided SLA at BCD values for 50 of the identified retirees, the Court only requires Defendants to produce the difference between 215 individuals and what Defendants have already produced. To ensure the individuals selected are representative of the putative class as a whole, and to avoid any potential gamesmanship in the individuals selected, Defendants must provide the SLA at BCD for every 25th retiree in the Data Set, continuing until 165 individuals are selected. With the 50 individuals for whom this data has already been produced, Plaintiff will have a total sample of 215 retirees. Defendants must identify the individuals selected in such a manner that allows Plaintiff, with reference to the Data Set previously produced, to confirm that the sample consists of every 25th retiree. The Court finds that the information provided by this sample will likely be sufficient to support a motion for class certification. If Plaintiff is successful in certifying the class, she will retain the right to the SLA at BCD values for each individual class member for purposes of calculating damages.

---

[7] The Court notes that Plaintiff in her briefs does not acknowledge that this sample was in fact produced by Defendants and instead only represents that an offer to produce such a sample was made. ECF No. 78 at 9.

### IV. Order

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion to Compel (ECF No. 78) is GRANTED IN PART to the extent that Defendants must disclose SLA at BCD values for the representative sample of putative class members described above. This sample shall be in addition to the sample of 50 putative class members Defendants previously provided Plaintiff, and consist of data for an additional 165 putative class members. Of the 4,272 retirees included in the Data Set, Defendants **must** provide the SLA at BCD value for every twenty-fifth retiree to Plaintiff no later than **May 1, 2025**.

IT IS FURTHER ORDERED the Defendants must identify to Plaintiff the members included in the representative sample so as to allow Plaintiff to confirm that every twenty-fifth retiree in the Data Set was selected and that Defendants did not intentionally select the members in a manner that benefited their position.

IT IS FURTHER ORDERED that the parties **must** meet and confer after the sample data has been disclosed to discuss any remaining issues arising from the sample data. This meet-and-confer must take place no later than **May 22, 2025**.

IT IS FURTHER ORDERED that should the disputes regarding the sufficiency of the sample data for class certification purposes remain following the meet and confer, the parties must file a joint request for a hearing at which time the Court will address the remaining disputes. If the sample provided is sufficient to allow Plaintiff to proceed to a motion for class certification, the parties must file a status report providing a briefing schedule for class certification and proposed discovery plan that will follow the decision on certification.

IT IS FURTHER ORDERED that discovery deadlines in the Court's most recent Scheduling Order (ECF No. 92) are vacated pending the outcome of the production ordered and anticipated motion for certification that will follow.

Dated this 1st day of April, 2025.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE